# JANUARY TERM, 1867.

Noonan and another vs. Orton.

PLEADING: *Supplemental complaint—Damages for breach of covenants which defendant should be decreed to execute.—How plaintiff defended against statute of limitations.*

1. In general, a supplemental complaint must aver matters which go to strengthen or prove the allegations of the original complaint, or to show more conclusively that the plaintiff is entitled to the relief there sought.

2. In an action for specific performance of an agreement for a lease, equity will not *generally* decree damages for breaches of covenants which should be included in such lease.

3. In decreeing the execution of the lease, the court may direct it to be dated anterior to the alleged breaches, so as to give an action at law for them.

4. But if the statute of limitations have run upon the breaches, *it seems* that the court cannot compel a *defendant* to enter into an undertaking not to avail himself of the statute in a subsequent action at law.

5. Where, in such an action, which had been pending for ten years, a supplemental complaint set up breaches of covenants which should be included in the lease, the execution of which was sought to be compelled by the original complaint: *Held*, that a demurrer to the supplemental complaint, as not stating a cause of action, should be overruled, unless the defendant should, within a reasonable time, (to be fixed by the circuit court), enter into an undertaking not to avail himself of the statute of limitations, nor to advert to the date of the lease, in an action or actions thereafter to be brought against him for alleged breaches of its covenants prior to its actual execution; but that on the execution of such an undertaking the supplemental complaint should be dismissed.

APPEAL from the Circuit Court for *Racine* County.

Plaintiffs filed a bill in equity in the circuit court for Milwaukee county, in January, 1855, by which as subsequently amended, they alleged in substance as follows: In 1850, Wol-

cott, Dousman, and Zelotes A. and Sanford D. Cotton, being then owners of certain lands on both sides of the Milwaukee river, at the village of Humboldt, in Milwaukee county, and of a dam across the river, and the water power created thereby, entered into an agreement, under seal, with the plaintiff *McNab* and one Cameron, to sell and convey to them, said *McNab* and Cameron, their heirs and assigns, certain lots in said village, on which the latter were to erect a paper mill; and also to lease to them, at a specified rent, 1000 cubic feet of water per minute, to be drawn from said dam, and used in driving the machinery of said mill; said lease to be renewable for ninety-nine years or forever.  Cameron died before the mill was erected, and the plaintiff *Noonan*, by an arrangement between the parties, took his place, and with *McNab* erected the paper mill, and received during the year 1856 a conveyance in fee of the lots as agreed.  On the 8th of January, 1851, Wolcott, Dousman and the Sanfords executed with the plaintiffs a deed of indenture, whereby, in consideration of the rents reserved therein, and certain covenants on plaintiffs' part, they leased to plaintiffs, their heirs &c., for four years, 1000 cubic feet of water per minute, to be taken from said dam and conveyed in a flume to said paper mill.  It was further agreed in said lease, 1. That Wolcott &c. should, within a reasonable length of time, raise the dam to the height of sixteen feet, and keep it and the flume in good repair.  2. That at any time during said four years, plaintiffs, upon giving a notice in writing, specifying the additional amount of water desired by them, should have such additional amount, not exceeding 1000 cubic feet per minute (to be drawn and used as aforesaid.)  3. That at the expiration of the four years, the lease should be renewed for ninety-nine years, either for 1000 cubic feet only, or for an additional amount not exceeding 1000 cubic feet, as the plaintiffs might elect.  4. That until the dam should be raised to the height of sixteen feet, plaintiffs should have the right to draw

from it so much water as would be equivalent to one thousand cubic feet of water per minute, under a head of sixteen feet. 5. That the several covenants in the deed should extend to and bind the respective parties, their heirs, executors, administrators and assigns.—This deed was recorded in 1852. In February, 1854, Wolcott, Dousman and the Sanfords sold and conveyed to the defendant, *Orton*, all their interest in said lands and water power; and it is charged that defendant had, at the time of such purchase, actual knowledge of said lease and agreement, and took the conveyance subject to said lease and the covenants therein; and that he afterwards collected and received rents under the lease. In December, 1854, plaintiffs notified *Orton* in writing that they elected to take 1000 additional cubic feet of water, and also, that they wished said lease on its expiration, to be renewed for ninety-nine years; and in November, 1854, they gave a like notice to Wolcott, Dousman and Zelotes A. Cotton (Sanford D. being out of the state). During several months in the summer and fall of 1854, plaintiffs could not obtain from said dam a quantity of water equal to 1000 cubic feet per minute. The dam had never been raised to the height of sixteen feet, although a reasonable time for raising it had long since elapsed, but was only about twelve feet high; and defendant had neglected to keep it in good repair. He also refused to permit plaintiffs to use said additional 1000 feet of water, and claims that he is not bound by the covenants and agreements of Wolcott, &c., in said indenture of lease; and has shut off the water from the flume leading to plaintiff's mill. On the 15th of January, 1855, plaintiffs presented to defendant a draft of a deed in extension of their said lease, for ninety-nine years, which he refused to execute. Plaintiffs have paid or tendered all the rent due on the lease.— On these alleged facts, the bill prayed for a decree requiring defendant to execute to them a lease of 2000 cubic feet of water for ninety-nine years, and to raise said dam to a height

of sixteen feet, and keep the same in repair, &c.; and also for an injunction restraining him from hindering plaintiffs from drawing said amount of water, &c.; and for general relief.

A demurrer to this bill was overruled, and this decision was sustained on appeal to the supreme court; where it was held that the lease set forth in the complaint conveys an interest in the land; that *Orton* took subject to the easement; that the covenant to renew the lease is valid, and runs with the land, and is binding upon *Orton;* and that there was no defect of parties. See 4 Wis., 335.   Before the appeal was decided, the plaintiffs filed another bill in the same court, in which they recite the previous proceedings in the cause up to and including the appeal, and aver in substance that *Orton*, by neglecting to raise or repair said dam, and by obstructing the flume leading to plaintiff's mill, had prevented them from obtaining more than one-third of the two thousand cubic feet of water per minute to which they were entitled ; that he had brought an action before a justice of the peace, as for a trespass, against plaintiffs' agent, who had removed said obstruction ; that he had replaced the obstruction after such removal ; that by reason of the loss of water occasioned by such obstruction, they had sustained damage to the amount of $25 per day ; that by reason of *Orton's* failure to repair the dam, they had suffered damage to the amount of $1000 or more since the 1st day of January then last past ; and that *Orton* continued to give out and declare that he would continue to divert said water, &c. Prayer, that defendant may be restrained from preventing plaintiffs' drawing water from said dam and flume to the amount of 2000 cubic feet per minute ; and from obstructing the flow of water in said flume so as to deprive them of said quantity of water ; and from prosecuting said suit against their agent ; that this bill may be considered in the nature of a supplemental bill to that first filed in the action, and both may be heard together ; that an account may be taken of plaintiffs'

damages by reason of defendant's neglect, refusal and wrongful acts aforesaid, and a decree rendered against him for the amount of such damages; that the injunction herein asked for may be made perpetual; and for general relief.

Afterwards, and subsequent to the adoption of the code, plaintiffs filed a "second supplemental complaint," which recites the filing of the original and first supplemental bills, and proceedings thereon; the decision of the supreme court on the appeal aforesaid; the continued pendency of the suit before said circuit court on the original and first supplemental bills; the continued refusal of defendant to raise the dam to the height of sixteen feet, or to keep it in repair, or to furnish plaintiffs with 2000 cubic feet of water, or more than half that quantity; and damages resulting to plaintiffs therefrom, amounting to $17,500, except for the time between April 8th and October 1st, 1861. It then avers that on said 8th of April, 1861, the dam was broken, and a portion of it carried away in consequence of defendant's neglect to keep it in repair; that by reason of his subsequent neglect to repair the injury, plaintiffs were wholly deprived of the use of the water at their mill until said 1st of October, 1861, to their damage in various specified ways, $12,700. It also contains other allegations of damage at other times from plaintiffs' neglect to repair the dam, amounting to over $5,000. The plaintiffs thereupon "claim the benefit of all the statements and matters contained in the original and first supplemental bill of complaint in this cause, and hereby make the same a part of this their second supplemental complaint." Prayer, for the judgment sought in the original and first supplemental bills, and also that there may be included judgment for the damages aforesaid.

The defendant demurred to this supplemental complaint as not stating a cause of action; and appealed from an order overruling the demurrer.

*E. Mariner*, for appellant:

The matter set out in a supplemental complaint must be material to the relief sought by the original complaint. Story's Eq. Pl., §§ 357, 615–16; Van Santv. Eq., 382; *Milner v. Harewood*, 17 Ves., 144. The nearest approach to a precedent for this kind of pleading is *Nelson v. Bridges*, 2 Beav., 239. But that case proceeds on the idea of compensation or damages where there can be only a partial performance, and compensation was necessary to enable the court to make any decree which should do justice, the property to be conveyed having been in part consumed by defendant pending the suit. *Todd v. Gee*, 17 Ves., 273; *Gwillim v. Stone*, 14 id., 129; and *Jenkins v. Parkinson*, 2 Mylne & K., 5, lay down a doctrine opposed to the practice here. The covenants, execution of which is sought to be compelled by the original bill, are executory during the period of ninety-nine years, and may be broken, or supposed to be, every day. If this practice is to obtain, the original suit may be perpetuated the entire ninety-nine years, and each day a separate action at law, to be tried by a jury, may be saddled upon it, and yet in the end execution of the covenants not be decreed. In decreeing touching matters ordinarily cognizable only at law, equity follows the law, and does not decree damages for breach of contract which accrued after suit brought, when a court of law would not.

*I. P. Walker*, for respondent, argued that the causes of action set out in the original and supplemental complaints, if they had all existed at the commencement of this action, might have been joined, under the principles of the code. R. S., ch. 125, sec. 29, subd. 1; 6 How. Pr., 269; 9 id., 326; 15 id., 286; 1 Duer, 629. Those which have arisen since, having grown out of the same transaction, and being connected with the same subject of action set forth in the original complaint, may properly be brought in by supplemental complaint. R. S., ch. 125, sec. 41.

The following opinion was filed at the June term, 1865 :

DIXON, C. J. We think that the demurrer must be sustained. The alleged supplemental matter is not material to the relief sought by the original complaint. It does not go to strengthen or prove the allegations of the original complaint, or show more conclusively that the plaintiffs are entitled to the relief there prayed. Such, we understand, must be the character and tendency of a supplemental complaint, whether the facts alleged be such as have occurred after the former complaint, or such as the party was ignorant of at the time his former pleading was made. Story's Eq. Pl., §§ 332–337 ; *Crompton v. Wombwell*, 4 Sim., 628 ; 1 Van Santvoord's Eq. Pl., (2d ed.), 312–313 ; *Milner v. Harewood*, 17 Ves., 145 ; *Todd v. Gee*, id., 274 ; *Gwillim v. Stone*, 14 Ves., 129 ; *Jenkins v. Parkinson*, 2 M. & K., 5. The most that can be said of the alleged supplemental matter is, that it shows that the defendant has broken the covenants of the lease, to compel the execution of which this suit was instituted, and the plaintiffs seek satisfaction by way of damages. We know of no precedent for this kind of pleading, and, on the contrary, the correct rule seems to be against it. For the breaches of the covenants the plaintiffs have an adequate remedy at law, and it is there that they should go for damages when the lease is executed.

*By the Court.*—Order reversed.

DOWNER, J., did not sit in this case, having been of counsel.

On a motion for a rehearing, *Matt. H. Carpenter*, for appellant, argued that a supplemental bill need not be in aid of the case made by the original, but is often maintainable by a defendant upon totally new facts for the first time brought to the knowledge of the court by a supplemental bill. Story's Eq. Pl., 337a ; *Standish v. Radley*, 2 Atk., 177 ; *Baker v. Whiting*,

1 Story, 218; *Barrington v. O'Brien*, 2 Ball & Beatty, 140, 173 *Gifford v. Hoit*, 1 Sch. & Lef., 386, 394, 410; *Foster v. Deacon*, 6 Madd., 44, 59; *Whitbeck v. Edgar*, 4 Sandf. Ch., 432; *Hitchcock v. Copling*, 4 Hare, 161 (30 Eng. Ch., 160); *Whitehear v. Hughes*, 1 Dickens, 283; *Williams v. Cook*, 10 Ves., 406; Welford's Eq. Pl., 113; *Oldham v. Eboral*, 1 Cooper's Cas. 27, [8 Eng. Ch., 363]; *Jenkins v. Cross*, 38 Eng. Ch., 76. After a decree rendered, a supplemental bill may be maintained to carry out and give full effect to the decree, and protect all rights of the parties under it. *Goodwin v. Goodwin*, 3 Atk., 370; *Dormer v. Fortescue*, id., 132–3; *Jones v. Jones*, id., 109; *Edgar v. Clevenger*, 2 Green Ch., 258; *Allen v. Taylor*, id., 435; *Whitbeck v. Edgar*, and *Foster v. Deacon*, *supra*; *M. & M. R. R. Co. v. M. & St. P. R. R. Co.*, 2 Wallace, 609; *Freeman v. Howe*, 24 How. (U. S.), 460. In this cause the supplementary bill is the only proper remedy. An action at law cannot be maintained; because, first, there was no covenant in existence at the time the acts complained of were done; and secondly, the defendant can only be decreed finally to execute the covenant as of the date of such decree. It is believed that no case can be found where the court has decreed specific performance of a contract, and at the same time denied the plaintiff compensation for damages which have accrued prior to the decree; and no court of law ever rendered a judgment for damages for the violation of a covenant that *ought* to have been made, but did not in fact exist until after the act complained of. See *Todd v. Gee*, 17 Ves., 273, 277; *Jenkins v. Parkinson*, 2 Mylne & K., 5; 2 Story's Eq., §§ 794, 796; *Mortlock v. Butler*, 10 Ves., 292; *McKay v. Carrington*, 1 McLean, 64; *King v. Bardeau*, 6 Johns. Ch., 38; *Dyer v. Hargrave*, 10 Ves., 506; *Halsey v. Grant*, 13 id., 73; *Howland v. Norris*, 1 Cox, 59; and especially *Forrest v. Elwes*, 4 Ves., 492. Even if it should be granted that the final decree in this cause may direct *Orton* to execute a lease with covenants *as of the date* when it ought to have been

executed, suppose the litigation should continue twenty years (which is not impossible), so that the statute of limitations will have run on the breaches of the contract, what will then be the plaintiff's remedy?

*Byron Paine, contra,* insisted that the distinction between "compensation," where complete specific performance cannot be enforced, and *damages* for a breach of covenants where a specific performance can be enforced, is well established ; and that while a court of equity gives such *compensation*, it leaves the party to his action at law for such *damages. Halsey v. Grant,* 13 Ves., 77 ; *Todd v. Gee,* 17 id., 273. 2. This is purely a case of damages for a breach of the obligation to repair—what would have been a breach of the covenants, if the lease had been renewed. There is no precedent for this kind of pleading. The cases cited by counsel to show that supplemental bills are maintainable which are not in aid of the original case, relate to supplemental bills in the nature of bills of review, and not to supplemental bills "strictly so called." Story's Eq. Pl. (Redfield's ed.), § 337. 3. The renewal of the lease may be antedated for the express purpose of giving the action at law. *Mundy v. Joliffe,* 5 Mylne & Craig, 167. Or the party may be decreed to stipulate that in any action at law he will admit the covenants. *Pain v. Coombs,* 1 De Gex & Jones, 34.

A rehearing was granted, and the case disposed of at the January term, as follows :

DIXON, C. J. A motion for a rehearing having been made and granted in this case, we have carefully re-examined the ground of our former decision, and find it in the main correct. When we said that the facts stated in a supplemental bill must be such as are material and beneficial to the case made by the original bill, we spoke of supplemental bills strictly so called, and it seems that we ought not to have been misunderstood.

The difference between such bills and supplementary bills in the nature of bills of review is familiar. Story's Eq. Pl. (Redfield's ed.), §§ 337, 337*a*, 338.

The distinction between *compensation* which a court of equity gives where a specific performance can be only in part enforced, and *damages* for a breach of the covenants of an agreement of which the court is able to enforce a complete specific performance, is obvious. It is noted in *Todd v. Gee*, and *Jenkins v. Parkinson*, cited in the former opinion. Lord ELDON said, in the first case, that satisfaction by way of damages for the nonperformance of an agreement to compel the execution of which the suit was instituted, was at law; and that unless under very particular circumstances, as there might be, a court of equity ought not to give such satisfaction.

It is insisted that the circumstances of this case render the supplemental complaint proper; first, because the alleged breaches of the covenant occurred before the execution of the lease, which is hereafter to be executed, if at all, under the direction of the court in this action; and, second, because the statute of limitations may run so as to bar the action at law for the damages before the lease shall have been executed. This suit has now been pending upwards of ten years, and it may be as many more before a final judgment will be obtained.

The first of these objections to the remedy at law can be very easily obviated. The court, in adjudging a specific performance of the agreement for a lease, may direct the lease to be dated at a time antecedent to the alleged breaches, in order to give the plaintiffs their action upon the covenants. This was done in *Mundy v. Joliffe*, 5 Mylne & Craig, 167, and in *Pain v. Coombs*, 1 De Gex & Jones, 34.

The other objection to the legal remedy is not, however, so readily removed.

If, as in *Pain v. Coombs*, it was the defendant who complained that the plaintiffs had done acts which would be breaches

on their part of the covenants of the intended lease, this objection might be obviated by the court requiring the plaintiffs to undertake not to plead or take advantage of the statute of limitations, nor to advert to the date of the lease, so as to defeat on those grounds an action which might be brought against them by the defendant. Undertakings of this nature are not unfrequently required of the party asking the aid of a court of equity, as conditions upon which such aid will be granted. If the party seeking relief does not perform such acts and conditions as to the court seem reasonable and just, his application will be dismissed. But here the case is reversed. It is the plaintiffs, the parties invoking the aid of the court, who complain that the defendant, who resists the specific performance, has done acts which will constitute breaches of the covenants of the lease when executed. Can the court in such case, after having enforced specific performance of the agreement for a lease, likewise compel the defendant to undertake not to avail himself of the statute of limitations, nor to advert to the date of the lease, as matters of defense in any action thereafter to be brought against him upon the covenants of the lease? It seems to us that it cannot, and that the power of the court in that case is limited to a specific performance of the agreement made by the parties.

The court cannot itself make any new agreement and compel the defendant to execute that also. For this reason we are of opinion that the case made by the supplemental complaint comes within the "very particular circumstances" mentioned by Lord ELDON, and that the demurrer was properly overruled. If, however, upon the cause being remanded, the defendant shall, within such reasonable time as shall be fixed by the circuit court, enter into an undertaking not to plead or avail himself of the statute of limitations nor to advert to the date of the lease in any action or actions which may hereafter be brought against him for any alleged breaches of the coven-

ants of the lease occurring before the same was actually executed, then we think that the supplemental complaint should be dismissed. If the rights of the plaintiffs are suitably protected, it is certainly more proper that the damages should be ascertained at law than in equity.

*By the Court.*—Order affirmed.